**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | Criminal No. | 1:04cr323 |
| | ) | Civil No. | 1:05cv1333 |
| SALVATORE CHARLES MOLLE | ) | | |

**ORDER**

This matter is before the court on defendant's *pro se* motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record, and oral argument would not aid in the decisional process.[1]

**I.**

On August 12, 2004, defendant Salvatore Charles Molle waived indictment and pled guilty to a two-count criminal information. Count One charged defendant with a violation of 26 U.S.C. §§ 5861(d) and 5845(a)(7) for possession of a silencer not registered to him in the National Firearms Registration and Transfer Record. Count Two charged defendant with a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) for distribution of hashish, a Schedule I controlled substance. In the plea agreement, defendant admitted to the offense conduct set forth in a written statement of facts and waived his right to appeal, as well as his right to have a jury consider various sentencing factors.

The offense conduct is easily summarized. Beginning on or about February 10, 2004,

---

[1] *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

1

defendant, who was residing in New Jersey, made arrangements to mail one ounce of hashish to an undercover police officer ("UC") in Virginia. Defendant ultimately did so after receiving a $250 money order at his residence in New Jersey. The same procedure was repeated with another ounce of hashish in late March or early April of 2004. In early June 2004, defendant traveled to Fairfax County in the Eastern District of Virginia to purchase firearms from several UC police officers. Defendant admitted that the guns were being purchased for subsequent sale to the Irish Republican Army ("IRA"). Defendant further informed the UC police officers that he had previously shipped guns, ammunition, and bullet proof vests to IRA members, concealing the materials in packages with motorcycle parts. After agreeing to the sale on this occasion, defendant entered the UC police officer vehicle and inspected a Ruger, Model Mark II, .22-caliber handgun equipped with a silencer. Defendant agreed to purchase this firearm for $650. Defendant also inspected and agreed to purchase six additional handguns. In total, defendant possessed six handguns constituting "firearms" as defined in 18 U.S.C. § 921(a)(3) and one silencer constituting a "firearm" as defined by 26 U.S.C. § 5845(a)(7). On June 3, 2004, defendant was arrested based on this offense conduct.

Included in the admitted statement of facts were stipulations regarding defendant's eligibility for various enhancements under the sentencing guidelines. Specifically, both the government and defendant agreed that the defendant was subject to a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A), for possession of 3 to 7 firearms and for a two-level enhancement under U.S.S.G. § 2K2.1(b)(4) for possession of a firearm with an obliterated serial number. At the sentencing phase, the government moved for an additional four-level enhancement for possession of firearms in connection with another felony offense, pursuant to

U.S.S.G. § 2K2.1(b)(5). As evidence to support the position that defendant had "knowledge, intent or reason to believe" that the firearms, once transferred to the IRA, "would be used or possessed in connection with another felony offense," the government cited defendant's admission in the statement of facts of his intention to transfer the firearms to the IRA and his statement that the IRA preferred revolvers to semiautomatic guns because the revolvers did not leave casings behind.

The Presentence Investigation Report (PSIR) further indicated that the government would seek a three-level, rather than a two-level reduction to defendant's offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. However, the government ultimately declined to request the additional one-level reduction as a result of defendant's abusive behavior, rushing investigators and shouting racial epithets and verbal abuse in the course of a discussion between the parties prior to sentencing. Thus, at sentencing, the Court adopted the recommendations of the PSIR, except that a two-level, rather than a three-level, reduction was granted for acceptance of responsibility. On October 29, 2004, defendant was sentenced to concurrent terms of seventy-two (72) months of imprisonment on Count One and sixty (60) months of imprisonment on Count Two, to be followed by three (3) years of supervised release.

On November 17, 2005, defendant filed a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. In his motion, defendant challenges the sentence on the basis that he received ineffective assistance of counsel from his attorney. Specifically, defendant argues that his attorney failed to present arguments that his sentence was unconstitutional for exceeding the maximum authorized by his guilty plea and for punishing him for conduct attributable to the government. Additionally, defendant argues that *United States v. Booker* requires the

retroactive correction of his allegedly unconstitutional sentence. The government filed a response to defendant's § 2255 motion on December 23, 2005, and defendant filed a traverse in reply on February 1, 2006. As both parties have fully briefed the issues raised in defendant's motion, the matter is now ripe for disposition.

## II.

As a threshold matter, it should be noted that defendant's § 2255 motion was filed in a timely manner within one year of the date on which his conviction became final. Defendant was sentenced on October 29, 2004. Thus, taking into account the ten-day period in which he could have filed an appeal, his conviction became final on November 8, 2004. Although defendant's § 2255 motion was actually filed with the court on November 17, 2005, it was signed and put into the prison mail system on November 8, 2005. And, using the prison mailbox rule from *Houston v. Lack*, 487 U.S. 266 (1988), the date of posting in the prison mail system is the appropriate filing date to consider for deadline purposes. The motion was filed just within the one-year period, and is therefore, timely under 28 U.S.C. § 2255.

## III.

Defendant's initial § 2255 claim is that he received ineffective assistance of counsel from his attorney. Ineffective assistance of counsel claims are evaluated using the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 688 (1984). First, defendant must show that his counsel's performance "fell below an objective standard for reasonableness," and second, he must show that "the deficient performance prejudiced the defense." *Id.* at 688. In other words, defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To

prevail on an ineffective assistance of counsel claim, defendant must overcome a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance" and that the challenged action "might be considered sound trial strategy." *Id.* at 690. Failure to satisfy either prong of the *Strickland* test defeats an ineffective assistance claim, and the court need not address both parts if the litigant makes an insufficient showing on one prong of the test. *Id.* at 700. In this case, because defendant has not demonstrated that his counsel's conduct fell outside the range of reasonable professional assistance, or that it had a prejudicial effect on his defense, his ineffective assistance of counsel claim fails.

Defendant provides two specific instances where he alleges that his counsel was ineffective. Both instances pertain to counsel's failure to raise an objection to the four-level enhancement applied to his offense level pursuant to U.S.S.G. § 2K2.1(b)(5) for possession or transfer of a firearm with knowledge, intent, or reason to believe that it would be used in connection with another felony offense. In this regard, defendant submits that counsel should have argued that this enhancement was improper on two grounds; namely (1) that the government should have been "collaterally estopped" from seeking the enhancement because it had the information necessary to prevent the crime before it took place, and (2) that the enhancement was invalid because it was based on a future foreign felony outside the jurisdiction of this court.

With respect to the first ground, characterized by defendant as an argument for "collateral estoppel" against the government, defendant relies on his prior arrangement with the ATF in New Jersey in connection with an IRA investigation. In this regard, defendant cooperated with ATF agents in New Jersey beginning in August of 2002 by providing

information about his weapon sales to members of the IRA in Ireland and the United States. According to Special Agent Ashan Benedict, the last documented contact between the defendant and the New Jersey ATF occurred in October 2003, and the entire investigation involving the defendant as a source was closed in March 2004. (Benedict Aff. ¶ 4, 5.) Significantly, the ATF did not advise defendant to continue to deal in firearms without appropriate authorization either during or after the closing of their IRA investigation. (Benedict Aff. ¶ 6.) Defendant, however, argues that because he was left with $80,000 of unpaid receipts from Ireland when the New Jersey ATF agents severed their ties with defendant, his only option was to continue to engage in business dealings with the IRA. Defendant further contends that because he had approached the ATF with his fears regarding the IRA's potential use of the firearms, the government was thereby put on notice and obligated to act to prevent future felonies from occurring as a result of those firearm transactions. This argument fails on several grounds. First, there was no reason for the ATF to suspect that defendant would continue his sales to the IRA after the ATF severed its contacts with the defendant in 2003. Furthermore, the ATF had no duty to continue to monitor defendant's activities or to prevent defendant from continuing to sell firearms illegally once its investigation was closed. And even if defendant held a different impression of the government's duty, this misperception does not excuse him from responsibility for his own criminal conduct or the consequences of such conduct.

With respect to counsel's conduct regarding this particular objection, counsel states in his sworn affidavit that defendant did not initially disclose that he had a prior relationship with the ATF; counsel only learned of the prior relationship at a debriefing following defendant's plea agreement. (English Aff. ¶ 2.) Additionally, counsel had doubts about the veracity of

defendant's proffered arguments based on his prior conversations with defendant. *Id*. Specifically, in counsel's opinion the objection sought to be raised by defendant was frivolous; counsel chose instead to focus on his stronger arguments. (English Aff. ¶ 2.) This decision falls within the range of reasonable professional assistance and thereby satisfies the first prong of the *Strickland* test. With respect to the second prong of *Strickland*, there is no legal basis to conclude that defendant's prior cooperation with the ATF obligated the government to prevent him or others from committing future crimes. Thus, had counsel raised this objection at sentencing, it would have been unsuccessful. Counsel's failure to do so was therefore not prejudicial to the defense and does not demonstrate ineffective assistance of counsel per the *Strickland* criteria.

      Defendant's second illustration of ineffective assistance of counsel relates to counsel's failure to object to the government's reliance on a future foreign felony as a basis for the four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(5). Again, this objection is without merit and would have been unsuccessful had it been raised at sentencing. First, the government did not offer a specific future felony as the basis for the sentencing enhancement and there is nothing in the record to indicate that it was relying on such a foreign felony. Second, counsel did object to the four-level enhancement on the basis that a future felony was too speculative to merit the increased sentence and this objection was properly rejected. Given this ruling, there is no reason to conclude that the result would have been different had counsel raised defendant's proffered objection. Counsel's decision not to present the specific objection argued by defendant therefore had no prejudicial effect on the defense under *Strickland*. To the contrary, counsel's decision to focus on his strongest objections demonstrates reasonable and adequate

assistance of counsel. In addition, counsel pursued other means to obtain a lower sentence for his client. For example, he arranged a meeting prior to sentencing between the defendant and law enforcement authorities, where he anticipated that defendant's cooperation could result in a Rule 35 reduction of sentence. (English Aff. ¶ 3.) *See* Rule 35, Fed. R. Crim. P. Instead, defendant used the opportunity to verbally and physically attack the ATF agent, resulting in the governments' denial of an additional one-point reduction in defendant's offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.

Defendant's final illustration of ineffective assistance of counsel relates to counsel's failure to inform defendant of his right to object to the four-level enhancement under U.S.S.G. § 2K2.1(b)(5) as unconstitutional. As discussed more fully below, however, this constitutional argument is without merit and counsel's failure to advise defendant about this argument was therefore not prejudicial to the defense under *Strickland*.

### IV.

Defendant's final § 2255 claim is based on the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). In *Booker*, the Supreme Court ruled that any facts necessary to support a sentence exceeding the maximum authorized by a plea of guilty had to be either admitted by the defendant or proven to a jury beyond a reasonable doubt. *Id.* at 244. Defendant argues that because no facts to support the claim that he had "knowledge, intent or reason to believe that the firearm would be used or possessed in connection with another felony offense" were proven beyond a reasonable doubt or admitted by him, his sentencing enhancement under U.S.S.G. § 2K2.1(b)(5) was unconstitutional. Yet, defendant's argument fails because the *Booker* decision does not apply retroactively to cases on collateral review, as

presented here. *United States v. Cruz*, 423 F.3d 1119 (9th Cir. 2005). Indeed, the *Booker* decision only applies retroactively to cases that were under direct review at time of the Supreme Court ruling. *Booker,* 543 U.S. at 268. The date of the *Booker* decision, January 12, 2005, falls well after the date when defendant was sentenced, October 29, 2004, and the date when defendant's right to appeal, absent the waiver in his plea agreement, would have expired. Furthermore, the Fourth Circuit in *U.S. v. Morris*, 429 F.3d 65, 70 (4th Cir. 2005), likewise held that *Booker* does not apply retroactively to any cases on collateral review.[2] Defendant's § 2255 claim based on *Booker* thus fails.

**V.**

For all the foregoing reasons, and for good cause,

It is hereby **ORDERED** that defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

Should defendant wish to appeal this Order he must do so within sixty (60) days, pursuant to Rules 3 and 4, Fed. R. App. P.

The Clerk is directed to send a copy of this Order to defendant and all counsel of record.

_____/s/_____
Alexandria, Virginia                           T. S. Ellis, III
July 7, 2006                                       United States District Judge

---

[2]*See also Padilla v. United States*, 416 F.3d 424 (5th Cir. 2005); *Never Misses A Shot v. United States*, 413 F.3d 781 (8th Cir. 2005); *United States v. Bellamy*, 411 F.3d 1182 (10th Cir. 2005); *Lloyd v. United States*, 407 F.3d 608 (3rd Cir. 2005); *Guzman v. United States*, 404 F.3d 139 (2nd Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005).